John Lewis JONES, Petitioner-Appellee,

v.

Harold J. CARDWELL, Superintendent, Arizona State Prison, et al., Respondents-Appellants.

No. 81–5634.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 1, 1982.

Decided Sept. 7, 1982.

David R. Cole, Phoenix, Ariz., for respondents-appellants.

Arthur G. Newman, Jr., Phoenix, Ariz., for petitioner-appellee.

* Honorable James H. Meredith, Senior United States District Judge for the Eastern District of Missouri, sitting by designation.

Before WRIGHT and FLETCHER, Circuit Judges, and MEREDITH,* District Judge.

FLETCHER, Circuit Judge:

The State of Arizona appeals the district court's grant of appellee Jones' habeas corpus petition. The district court granted the petition because it found that, in sentencing appellee, the state court had considered evidence obtained in violation of appellee's Fifth and Sixth amendment rights. We note jurisdiction under 28 U.S.C. § 2253 (1976), and affirm.

## FACTS

An Arizona jury convicted appellee of first degree burglary and rape. After conviction but before sentencing, a state probation officer interviewed defendant on several occasions. During one of these sessions, defendant confessed the commission of numerous other crimes. The probation officer reported the confession to the state court judge. The report included a written confession signed by the defendant. The judge relied on this information in imposing a sentence.

The defendant appealed his conviction and sentence in state court where they were affirmed. *State v. Jones*, 110 Ariz. 546, 521 P.2d 978 (1974). He then filed a federal habeas corpus petition which was denied. On appeal from this denial, we remanded to consider the propriety of using the probation officer's report in determining defendant's sentence. *Jones v. Cardwell*, 588 F.2d 279, 281 (9th Cir. 1978). A magistrate held a hearing on remand and recommended finding that use of the report in the sentencing process violated appellee's Fifth and Sixth amendment rights. The district court agreed and entered an order granting the petition and ordering resentencing. The state filed a timely appeal.

## ANALYSIS

### A. Privilege Against Self-Incrimination

■ The state argues that the privilege against self-incrimination should not apply to the instant pre-sentence interview. While the state correctly points out that, in imposing sentence, " 'a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come,' " *Roberts v. United States,* 445 U.S. 552, 556, 100 S.Ct. 1358, 1362, 63 L.Ed.2d 622 (1980) (quoting *United States v. Tucker,* 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972)), this general principle of sentencing does not address the question of whether the privilege against self-incrimination applies to the present sentencing procedure. A sentencing judge's broad discretion to consider information in imposing sentence does not extend to consideration of information obtained in violation of a defendant's privilege against self-incrimination. *See, e.g., United States ex rel. Brown v. Rundel,* 417 F.2d 282, 284–85 (3d Cir. 1969); *United States ex rel. Rivers v. Myers,* 384 F.2d 737, 742–743 (3d Cir. 1967). *Cf. United States v. Tucker,* 404 U.S. 443, 447–49, 92 S.Ct. 589, 591–92, 30 L.Ed.2d 592 (1972) (convictions obtained in violation of defendant's Sixth Amendment rights may not be considered in imposing sentence); *Verdugo v. United States,* 402 F.2d 599, 613 (9th Cir. 1968), *cert. denied,* 402 U.S. 961, 91 S.Ct. 1623, 29 L.Ed.2d 124 (1971) (evidence obtained in violation of Fourth Amendment may not be considered in imposing sentence). To hold otherwise would undercut seriously the protection afforded a defendant by the privilege.

■ In *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), the Supreme Court found the Fifth Amendment privilege against self-incrimination

applicable to the penalty phase of a capital murder trial. *Id.* at 462–63, 101 S.Ct. at 1872–73. The reasoning that underlies the decision in *Estelle* supports application of the Fifth Amendment privilege to the sentencing procedures in the instant case. The essence of the Fifth Amendment privilege is " 'the requirement that the state which proposes to convict *and punish* an individual produce the evidence against him by the independent labor of its officers, not by the simple, cruel expedient of forcing it from his own lips.' " *Id.* at 462, 101 S.Ct. at 1872 (quoting *Culombe v. Connecticut,* 367 U.S. 568, 581–82, 81 S.Ct. 1860, 1867, 6 L.Ed.2d 1037 (1961)) (emphasis supplied in *Estelle*). Moreover, "the availability of the [Fifth Amendment] privilege does not turn upon the type of proceeding in which its protection is invoked, but upon the nature of the statement or admission and the exposure which it invites." *In re Gault,* 387 U.S. 1, 49, 87 S.Ct. 1428, 1455, 18 L.Ed.2d 527 (1967). This case, like *Estelle,* involves statements and admissions by an incarcerated defendant to an individual acting on behalf of the state [1] that exposed the defendant to serious consequences. Accordingly, we find the Fifth Amendment privilege against self-incrimination applicable to the state's use of appellee's probation interview.

■ It does not follow necessarily from this conclusion that every encounter between the state and a convicted but unsentenced defendant brings the Fifth Amendment privilege into play. But, where, as here, the state's agent seeks from the convicted defendant a confession of additional criminal activity and that confession is used to enhance a defendant's sentence, we think it beyond peradventure that the defendant may properly claim the protection of the privilege against self-incrimination. As the Court noted in *Estelle,* "[g]iven the gravity of the decision to be made at the penalty

---

1. In another context, the district court found the probation officer was not "acting solely in [appellee's] interest," rather he was acting for the state and "saw it as his function to assist the prosecution and the defense counsel as well as the sentencing court." This, however, does not mean that the probation officer was, in fact, a law enforcement official within the meaning of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *See Estelle v. Smith,* 451 U.S. at 467, 101 S.Ct. at 1875.

phase, the state is not relieved of the obligation to observe fundamental constitutional guarantees." 451 U.S. at 463, 101 S.Ct. at 1873.

## B. Voluntariness

This court recently has articulated with considerable clarity the law relating to the voluntariness of a defendant's confession when the defendant has a right to claim the protection of the privilege against self-incrimination:

> In order to be voluntary, a confession must be "the product of a rational intellect and a free will." *Blackburn v. Alabama*, 361 U.S. 199, 208, 80 S.Ct. 274, 280, 4 L.Ed.2d 242 (1960). The fifth amendment secures "the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty ... for such silence." *Malloy v. Hogan*, 378 U.S. 1, 8, 84 S.Ct. 1489, 1493, 12 L.Ed.2d 653 (1964). Consequently, a confession "must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence." *Id.* at 7, 84 S.Ct. at 1493 (quoting *Bram v. United States*, 168 U.S. 532, 542–43, 18 S.Ct. 183, 186–87, 42 L.Ed. 568 (1897)).
>
> A confession is involuntary whether coerced by physical intimidation or psychological pressure. *Townsend v. Sain*, 372 U.S. 293, 307, 83 S.Ct. 745, 754, 9 L.Ed.2d 770 (1963). Law enforcement conduct which renders a confession involuntary does not consist only of express threats so direct as to bludgeon a defendant into failure of the will. Subtle psychological coercion suffices as well, and at times more effectively, to overbear "a rational intellect and a free will."

*United States v. Tingle*, 658 F.2d 1332, 1335 (9th Cir. 1981).

In the case before us, the magistrate found and the district court agreed that: (1) prior to the pre-sentence probation interview that resulted in appellee's confession, appellee received written instructions, reiterated orally, that "[y]ou are here under court order and it is imperative that you follow all instructions, both in writing and as given you verbally;" (2) the interviewer questioned appellee about the crime of which he had been convicted "as well as any additional criminal activity for which the petitioner was responsible;" and, (3) "[p]etitioner's admissions were the result of questioning by [the probation officer] rather than spontaneous statements by him." The state does not offer, and we cannot discover, any basis on which to find these factual determinations clearly erroneous. *See United States v. Ek*, 676 F.2d 379, 383 (9th Cir. 1982).

On the basis of its factual findings the magistrate concluded, and the district court agreed, that "[p]etitioner's confessions were not voluntary." Our independent review of the record convinces us that the district court was correct. *See United States v. Tingle*, 658 F.2d at 1335 (quoting *Beckwith v. United States*, 425, U.S. 341, 348, 96 S.Ct. 1612, 1617, 48 L.Ed.2d 1 (1976)). Appellee had been convicted of a crime and was in jail awaiting sentencing. He was instructed that he had no choice but to answer the questions put to him by the probation officer. Because the state was aggressive in extracting a confession from appellee without warning him of the consequences, we hold that appellee's confession, in the setting in which it occurred, was involuntary. Consideration of this involuntary confession by the sentencing judge violated appellee's Fifth Amendment rights.[2] Accordingly, the district court correctly granted appellee's habeas corpus petition.

The judgment of the district court is AFFIRMED.

---

**2.** Because we find appellee entitled to habeas relief on the basis of the sentencing judge's consideration of appellee's involuntary confession, we need not decide whether or under what circumstances a defendant in appellee's position is entitled to a *Miranda* warning, *see Estelle v. Smith*, 451 U.S. at 466–69, 101 S.Ct. at 1875–76, nor must we decide whether appellee's Sixth Amendment right to counsel was violated by the state's conduct of the probation interview, *see id.* at 469–73, 101 S.Ct. at 1876–78. We leave these questions for decision another day.