Albert H. BOOTH, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Earl HARRIS, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Supreme Court of Kentucky.

Sept. 13, 1984.

Rodney McDaniel, Asst. Public Advocate, Frankfort, for appellant Albert H. Booth.

William M. Radigan, Asst. Public Advocate, Frankfort, for appellant Earl Harris.

Steven L. Beshear, Atty. Gen., and David A. Smith, Asst. Atty. Gen., Frankfort, for appellee.

## OPINION OF THE COURT

The appellants were convicted of robbery in the first degree and for being persistent felony offenders in the first degree. They received sentences of life imprisonment, and appeal to this court as a matter of right.

Mrs. Mildred James, a worker at Consolidated Freight Ways, entered a First Security Bank on March 10, 1982, to obtain a cashier's check for the company in the amount of $230.98. Unfortunately, she entered the bank as a robbery was in progress. Appellant Booth, who was carrying a gun, demanded that she give him her money and lie down on the floor. Mrs. James gave him all but $.93 she was carrying. The men also robbed the bank tellers and fled from the bank, but were arrested a short time later.

The appellants pled guilty to federal bank robbery charges under 18 U.S.C. § 2113 and received a sentence of twenty-five years each. The appellants assert that their subsequent conviction in state court for the robbery of Mrs. James is in violation of KRS 505.050 and their right against double jeopardy under the state and federal constitutions.

KRS 505.050 states in part:

When conduct constitutes an offense within the *concurrent* jurisdiction of this state and of the United States or another state, a prosecution in such other jurisdiction is a bar to a subsequent prosecution in this state under the following circumstances:

(1) The former prosecution resulted in an acquittal, a conviction which has not subsequently been set aside or a determination that there was insufficient evidence to warrant a conviction and the subsequent prosecution is for an offense involving the same conduct unless:

(a) Each prosecution requires proof of a fact not required in the other prosecution; or ... (Emphasis added)

The issue before this court is whether the robbery of Mrs. James is within the concurrent jurisdiction of the state and federal courts. The federal bank robbery charge necessitated proof that the bank in question had some federal connection, i.e., it was insured by the Federal Deposit Insurance Corporation (F.D.I.C.). *Goode v. McCune*, 543 F.2d 751, 753 (10th Cir.1976). For the robbery of Mrs. James to come under the federal statute, her money must have been in the "care, custody, or control" of the bank.

18 U.S.C. § 2113 states in part:

(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, or any savings and loan association; ...

The appellants cite four cases to support their position that the robbery of Mrs. James is included within the statute. All of the cases are distinguishable from the present case in that they involve much more bank/customer interaction than an individual merely being on the premises of a bank: *United States v. Dix*, 491 F.2d 225 (9th Cir.1974) involved the theft of bonds transferred from a bank vault to the bank's conference room; *Chapman v. United States*, 346 F.2d 383 (9th Cir.1965) involved books and papers locked inside a bank after business hours; *United States v. Lankford*, 573 F.2d 1051 (8th Cir.1978) involved money deposited inside a bank's night de-

pository; *United States v. Clark*, 398 F.Supp. 341 (E.D.PA.1975) involved a safe deposit box situated inside a bank.

■ The money taken from Mrs. James was not in the "care, custody or control" of the bank, and therefore, the robbery of her by appellants was not within the concurrent jurisdiction of this state and the United States. The trial court properly overruled appellants' motion to dismiss the count of first-degree robbery of Mildred James.

The appellants also assert that their subsequent prosecution in state court violated their right against double jeopardy as guaranteed by the Kentucky and United States Constitutions. Double jeopardy is not implicated in this case because, as stated above, the appellants were not charged with the same offense in both state and federal court.

■ Appellant Harris asserts that the trial court erred in overruling his motion for a directed verdict of acquittal on first-degree robbery. Harris' position is that while he was behind the bank counter grabbing the teller's money, his accomplice, stationed in the bank lobby, took Mrs. James' money without Harris' knowledge. Harris states that there was no evidence that he intended to aid and abet in the robbery of Mrs. James, and so, he should have been granted a directed verdict on the charge. The trial court did not err by denying the motion. *Callahan v. Commonwealth*, Ky., 508 S.W.2d 583 (1974).

■ Finally, appellants contend that the trial court erred by permitting a United States probation officer to testify concerning their dates of birth and probationary status on the date of the offense, during the PFO portion of the trial. Appellants assert that, by permitting this testimony, their right of confrontation and their privilege against self-incrimination were violated. The objection at trial was not based upon appellants' right to confrontation, so that issue is not preserved for review.

During previous federal court proceedings, both appellants and their attorneys consented, in writing, to a pre-sentence investigation. As part of this investigation, the federal probation officer asked each appellant to provide his date of birth, which they did. The officer also informed each appellant that his investigation had disclosed that they were on probation from previous offenses at the time of the instant offense. Both appellants confirmed this information. Appellants' probationary status at the time of this offense and their age at the time of their previous offenses were essential elements which the Commonwealth had to prove to obtain the PFO convictions. KRS 532.080. Appellants argue that the probation officer's testimony should have been excluded because these statements were involuntary under *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981) and *Jones v. Cardwell*, 686 F.2d 754 (9th Cir.1982). Appellants further argue that, without this evidence, their PFO convictions must fall.

We find that the facts of this case are distinguishable from those found in the *Estelle* and *Jones* decisions. *Estelle* was a capital murder prosecution, in which the state was seeking the death penalty. Prior to trial, the trial court ordered a psychiatric examination of the defendant for the sole purpose of determining his competency to stand trial. During the penalty phase of the trial, the prosecution was allowed to call the psychiatrist to testify that, from his interviews with the defendant, he had been able to determine that the defendant would be a dangerous threat to society in the future if not executed. This was one of the three factors which the jury was required to find in order to impose the death penalty, which they did. The United States Supreme Court ruled that this testimony should have been excluded because a criminal defendant cannot be compelled to respond to a psychiatrist if his statements can be used against him in a capital sentencing procedure. The court indicated that, in such a situation, the defendant must first be advised of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

In *Jones, supra,* the Ninth Circuit Court of Appeals applied the *Estelle* rule and ruled that testimony by a probation officer concerning his presentence interview of the defendant should have been excluded. In the *Jones* proceeding, the defendant was informed that he was required to answer the probation officer's questions. During this questioning, the defendant confessed that he had committed numerous other crimes. The opinion is not clear on this point, but it would seem that these were crimes for which he had not been prosecuted. The probation officer was allowed to testify about these confessions and the judge relied upon this report in imposing sentence. The Ninth Circuit found that the defendant's Fifth Amendment privilege against self-incrimination had been violated.

It is clear that, in both *Estelle* and *Jones,* the state obtained information known only by the defendant and used such information to increase his punishment. It is also clear that, in both cases, the defendant was compelled to answer questions.

In the instant situation, both appellants and their attorneys consented to the pre-sentence investigation. The information objected to was not known only by the appellants. Date of birth and prior criminal history are matters of public record. We note that, in *Baumann v. United States,* 692 F.2d 565 (9th Cir.1982), the Ninth Circuit held that a routine presentence interview does not rise to the level of a "custodial interrogation." We agree. In this case, the probation officer was merely attempting to verify that the information he had obtained in his investigation was accurate. It was in the interest of each appellant that such was the case. Neither of the factors unique to the *Estelle* and *Jones* rulings was present in this case. Therefore, there was no requirements that the appellants be advised of their rights. The testimony concerning their date of birth and probationary status was properly admitted into evidence.

The judgments of the Fayette Circuit Court are affirmed.

All concur.