Derek E. GRONQUIST, Petitioner–
Appellant,

v.

Kay WALTER, Respondent–Appellee.

No. 99–36044.

D.C. No. CV–98–01239–JCC.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 5, 2001.

Decided Aug. 16, 2001.

* Honorable Donald C. Pogue, United States Court of International Trade Judge, sitting by designation.

Before WALLACE, HALL, and T.G. NELSON, Circuit Judges.

MEMORANDUM [1]

Washington state prisoner Derek Gronquist petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Gronquist was convicted of three counts of attempted kidnaping in the first degree. He appeals the district court's order denying his habeas petition, arguing that the state trial court erred in substantially increasing his sentence because of his potential for future dangerousness. He contends that the trial court improperly admitted expert testimony based upon confidential material derived from his Sexual Offender Treatment Program ("SOTP") files, thereby violating his Fifth Amendment right against self-incrimination.

Under 28 U.S.C. § 2254(d), we may grant habeas relief from a state court decision only if the state adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1511, 146 L.Ed.2d 389 (2000). Gronquist has failed to offer sufficient evidence for us to conclude that the trial court was unreasonable in finding that the expert witness offered competent testimony on the issue of Gronquist's future dangerousness that was not derived from the privileged SOTP files.

1. This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.

■ Gronquist and the Department of Corrections signed an agreement to keep his discussions in the SOTP program confidential. *See King v. Riveland,* 125 Wash.2d 500, 886 P.2d 160, 169 (Wash. 1994) (en banc) (affirming a lower court decision enforcing written confidentiality promise made to prisoners when they entered the SOTP program). The Fifth Amendment protects a criminal defendant from the use of discussions with his therapist without his consent. *See Pens v. Bail,* 902 F.2d 1464, 1466 (9th Cir.1990) (per curiam) (holding that defendant's Fifth Amendment right was violated when the trial court imposed an exceptional sentence based on statements made in sexual psychopath treatment program despite therapists' assurances that statements would not be revealed).

The trial court took steps, however, to ensure that Gronquist's sentence was not based on the privileged communications from the treatment program. The state's expert, psychologist Roger Wolfe, opined that Gronquist presented a danger to the community and initially relied on the SOTP records in forming his opinion. After the court learned that the SOTP records were confidential, the trial judge sealed off access to the SOTP files and conducted a fact-finding hearing to determine the basis for Wolfe's evaluation. Wolfe conceded that he had reviewed the privileged materials in forming his opinion, but stated that his opinion would have remained the same even if he had not looked at the SOTP files. The trial judge did not take Wolfe's word for this; he scrutinized Wolfe's opinion and explained that he was relying only on the conclusions that Wolfe drew that were not based on evidence from the SOTP files. *See* Findings of Fact and Conclusions of Law Supporting Imposition of an Exceptional Sentence at 3 ("Mr. Wolfe considered the impulsive nature of the facts of the offenses on which the defendant is to be sentenced, the short time from release to reoffense, and the typical pattern of offense behaviors by perpetrators of this type of crime in forming his opinion that the defendant is likely to reoffend."). The trial judge used the parts of Wolfe's opinion that did not rely on the SOTP files to make his own independent evaluation of Gronquist's future dangerousness. *See id.* ("The court accepts Mr. Wolfe's opinion and also independently finds that the defendant is likely to reoffend and presents a high degree of future dangerousness to the community.").

■ Gronquist contends that the trial judge erred by relying on three parts of Wolfe's evaluation that were derived from a reading of the confidential files. Specifically, Gronquist contends that the trial court relied on: 1) Wolfe's diagnosis of a personality disorder under the Diagnostic and Statistical Manual of Mental Disorders ("DSM–III"); 2) an actuarial prediction of future dangerousness; and 3) on information that Gronquist completed the SOTP program before he attempted the three kidnapings.

Wolfe diagnosed Gronquist with an antisocial personality disorder under the DSM–III. According to the DSM–III, one of the essential criteria for an antisocial personality disorder is a history of antisocial behavior that begins before age 15. The only evidence of Gronquist's antisocial behavior before age 15 came in the form of revelations he made to his therapists while in the SOTP program. Thus, the trial court could not rely on Wolfe's DSM–III diagnosis in setting Gronquist's sentence. But the trial judge did not rely on the DSM–III diagnosis in finding that Gronquist posed a risk of future dangerousness. In fact, the trial judge acknowledged on the record that Wolfe's DSM–III diagnosis was weak given his reliance on the confidential files.

Wolfe also made an actuarial prediction of future dangerousness. To make this prediction, he relied on information about Gronquist's childhood that was derived from the confidential SOTP records. But there is no indication in the record that the trial judge relied on this actuarial prediction in making his own independent finding of future dangerousness.

■ Finally, Gronquist contends that the trial court did not realize that Wolfe continued to rely on privileged information from the SOTP files by using the fact that Gronquist completed the SOTP program to show that he was not amenable to treatment. Wolfe admitted that the fact that Gronquist reoffended after completing the SOTP program was a key factor in his opinion that Gronquist was not amenable to treatment, and Wolfe learned that Gronquist *completed* the SOTP program from SOTP documents. The mere fact that Gronquist completed the program is not something that is shielded from judicial review under the Fifth Amendment, however. Unlike remarks made to treating mental health personnel, completion of a treatment program is a mere fact. Although communicative acts are shielded by the Fifth Amendment, nontestimonial acts are not. *See Estelle v. Smith*, 451 U.S. 454, 463–65, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981).

■ Even without the confidential materials, Wolfe had adequate evidence to justify his opinion as to future dangerousness. Wolfe explained that even if his personality disorder diagnosis was not valid, he could identify specific psychological conditions in Gronquist (pedophilia and sexual sadism) solely from the police reports and witness statements from the

kidnaping attempts. And even without explicit confirmation of the fact that Gronquist completed his treatment in the SOTP program, non-amenability can be inferred from his participation in the program and then attempting the kidnapings shortly after undergoing treatment. *See State v. McNallie*, 123 Wash.2d 585, 870 P.2d 295, 298 (Wash.1994) (en banc) ("It is difficult to conceive of more reliable objective evidence of lack of amenability to treatment and future dangerousness than the fact that, despite being in treatment, the defendant continues to engage in the very criminal behavior for which he or she is being treated."). Moreover, the trial judge explained that the issue of whether Wolfe's opinion was irrevocably tainted by his exposure to the SOTP files was a factual one and that he had concluded from his review of Wolfe's testimony and observation of his demeanor on the witness stand that his testimony was still valuable. The trial judge also independently made his own factual finding of future dangerousness based upon the non-confidential evidence. Because the state court's decision was not an unreasonable application of the facts or the law, the district court properly denied Gronquist's habeas petition.[2]

AFFIRMED.

**2.** In his pro se reply brief, Gronquist contends that his exceptional sentence is unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Gronquist's sentence does not conflict with *Apprendi* because the trial judge's enhancement did not raise the sentence beyond the statutory maximum of 30 years. *See United States v. Garcia–Sanchez*, 238 F.3d 1200, 1201 (9th Cir.2001).